IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DENNIS POWELL,

       Plaintiff,                    CIV. S. 07-0025 GGH

    vs.

MICHAEL J. ASTRUE,          <u>ORDER</u>
Commissioner of
Social Security,

       Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment is denied, and the Commissioner's Motion for Summary Judgment is granted. The Clerk is directed to enter judgment for the Commissioner.

<u>BACKGROUND</u>

        Plaintiff, born April 26, 1951, applied for disability benefits on August 17, 2004, with a protective filing date of July 28, 2004. (Tr. at 60, 16.) Plaintiff alleged he was unable to work since June 30, 2004, due to bone spur and foot, leg, and shoulder injuries. (Tr. at 60, 100.)

\\\\\

\\\\\

1

In a decision dated June 19, 2006, ALJ William C. Thompson, Jr. determined that plaintiff was not disabled.[1] The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.
>
> 2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b) and 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease and status post bilateral arthroscopic shoulder surgery (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

| | | |
|---|---|---|
| | 5. | After careful consideration of the entire record, I find that the claimant has the residual functional capacity to stand and/or walk for six hours in an eight hour workday and sit without limitation when not required to stand or walk. He can lift twenty-five pounds frequently and fifty pounds occasionally. He can stand and walk in combination for at least six hours in a work day and can sit without limit when not required to stand or walk. He can climb ramps and stairs but should not climb ladders, ropes or scaffolds. He can reach overhead occasionally with the bilateral upper extremities. The claimant should avoid exposure to hazards such as unprotected heights or moving machinery. |
| | 6. | The claimant is unable to perform any past relevant work (20 CFR 404.1565). |
| | 7. | The claimant was born on April 26, 1951 and was fifty-three years old on the alleged disability onset date, which is defined as "closely approaching advanced age" (20 CFR 404.1563). |
| | 8. | The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564). |
| | 9. | Transferability of job skills is not material to the determination of disability due to the claimant's age (20 CFR 404.1568). |
| | 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566). |
| | 11. | The claimant was not under a "disability," as defined in the Social Security Act, from June 30, 2004 through the date of this decision (20 CFR 404.1520(g)). |

(Tr. at 18-23.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Erred in Finding that Plaintiff Did Not Have a Severe Mental Impairment at Step Two of the Analysis; B. Whether the ALJ Improperly Rejected Plaintiff's Credibility; and C. Whether the ALJ Failed to Provide Legitimate Reasons for Rejecting Dr. Morgan's Opinion.

\\\\\

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

  A. Dr. Morgan's Psychological Report

Plaintiff first claims that the ALJ erroneously excluded from consideration at step two plaintiff's mental impairment as found by Dr. Morgan, and improperly rejected this psychologist's opinion.

At the second step of the disability analysis, an impairment is not severe only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). At this step, the ALJ may decline to find a severe impairment "*only* if the evidence

establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original).

> The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. .... And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.

Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996).

The ALJ in this case found that plaintiff had the severe impairments of degenerative disc disease and status post bilateral arthroscopic shoulder surgery. (Tr. at 18.) He did not find plaintiff's "depressive disorder, not otherwise specified, moderate," as diagnosed by Dr. Morgan to be a severe impairment. (Tr. at 19, 263.) He explained:

> Although the claimant also alleged that he suffers from depression, it does not cause at least moderate restrictions in two or more areas of functioning, have been chronic [sic] for at least two years duration with other factors or result in a complete inability to function independently outside the area of his home. A psychological assessment on December 30, 2005, by Dr. Robert Morgan, a psychologist, stated a diagnosis of moderate depression with marked restriction of daily activities, marked difficulty maintaining social functioning and moderate difficulty maintaining concentration, persistence or pace (13F). I give little weight to Dr. Morgan's assessment. The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. The claimant has not sought nor received any recent mental health treatment nor does the medical evidence of record reflect such complaints. In addition, the assessment itself is internally inconsistent, finding marked restrictions at one point yet rating the impairment as non-severe (11F/1). It is emphasized that the claimant underwent the examination that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Further, the doctor was

5

>presumably paid for the report.  Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored.  I find that the claimant's depression, to the extent it exists, does not rise to the level of a severe impairment.

(Tr. at 19-20.)

The ALJ's stated reasons are sufficient.  Dr. Morgan evaluated plaintiff one time, on December 30, 2005.  After administering various tests, Dr. Morgan concluded that plaintiff had depressive disorder, moderate, based on his "loss of interest in almost all of his activities, decreased energy, and feelings of both guilt and worthlessness." (Tr. at 263.) GAF was rated at 55-60.[2] (Id.)  This psychologist opined that plaintiff's prognosis over the next twelve months was poor.  (Id. at 264.)  At this time, plaintiff was found to have a poor ability to relate to co-workers and supervisors, deal with the public, handle work stress, understand, remember and carry out complex or detailed instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability.  (Id. at 253-54.)  He was found to have a fair ability to follow work rules, use judgment, function independently, maintain attention and concentration, understand, remember and carry out simple instructions, and maintain personal appearance.  (Id.)

The psychiatric review technique form completed by Dr. Morgan is inconsistent both internally and with his written summary.  It states that plaintiff's impairment is not severe, yet finds marked restrictions in activities of daily living and maintaining social functioning.  (Id. at 250-51.)

There are no other mental health treatment records in the file, and the existing medical records which pertain to plaintiff's other ailments do not indicate any mental health

---

[2] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994) ("DSM IV").  According to the DSM IV, a GAF of 51 - 60 indicates moderate symptoms such as flat affect, circumstantial speech, occasional panic attacks, or moderate difficulty in functioning as in few friends or conflicts with peers or co-workers.

6

problems, treatment, medication, or even referrals for counseling. (Tr. at 176-247.) Additionally, plaintiff's disability appeal papers do not indicate any mental impairment. (Id. at 100-29.) Therefore, although Dr. Morgan's opinion was uncontradicted, the ALJ gave clear and convincing reasons to reject it.

Furthermore, under Edlund v. Massanari, 253 F.3d 1152 (9th Cir. 2001), even if plaintiff can demonstrate a medically determinable impairment, he must also prove that this impairment affects his ability to perform basic work activities. Id. at 1159-60. Even if Dr. Morgan's report were accepted, it indicates that plaintiff can do basic work activities, and therefore it is not severe. For example, plaintiff's memory was found to be low average to average; he could perform a three step command; he reported a decrease in physical activity due primarily to pain, and only secondarily due to depression; he had only minor difficulties in concentration, and presented well on his mental status examination; he had a fair ability to make occupational adjustments, and a satisfactory or fair ability to follow work rules, use judgment, function independently and maintain attention and concentration. (Id. at 261, 262, 263, 264.)

As pointed out by defendant, Dr. Morgan's evaluation was based on plaintiff's subjective complaints, as is usually necessary in cases of depression. Although Dr. Morgan appears to have unqualifiedly accepted these complaints, the ALJ properly rejected plaintiff's credibility for valid reasons, as discussed in the next section, and therefore was entitled to minimize the weight given to these complaints.

Finally, plaintiff's moderate depression was only diagnosed near the end of the treatment record, in December, 2005, only a month before the administrative hearing, and was not raised initially as a basis for disability, or developed anywhere else in the record. As such, it appears to be a last ditch effort to create another basis for disability entitlement.

The court finds that the ALJ correctly found plaintiff's mental impairment not to be severe, and gave clear and convincing reasons to reject Dr. Morgan's opinion.

\\\\\

B. Whether the ALJ Rejected Plaintiff's Testimony Without Providing Legally Sufficient Reasons

Plaintiff objects to the ALJ's rejection of Dr. Morgan's report in part because this psychologist relied on plaintiff's subjective complaints which the ALJ in turn found to be lacking in credibility.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ who used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc). The ALJ may not find subjective complaints incredible solely because objective medical evidence does not quantify them. Id. at 345-46. If the record contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ then considers the nature of the alleged symptoms, including aggravating factors, medication, treatment, and functional restrictions. See id. at 345-47. The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) daily activities.[3] Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician

---

[3] Daily activities which consume a substantial part of an applicants day are relevant. "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quotation and citation omitted).

8

and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct, may also be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990). Absent affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony must be clear and convincing. Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

In this case, the ALJ found that plaintiff's subjective complaints were not entirely credible. He fully addressed the issue:

> Although the claimant has received treatment for the allegedly disabling impairment(s), that treatment has been essentially routine and conservative in nature. The claimant never sought or received treatment from a specialist; all treatment has been rendered by a general practitioner or a chiropractor. The record also reflects significant gaps in the claimant's history of treatment. The record reflects that the claimant failed to even mention several of his complaints on numerous occasions. In light of the foregoing, the claimant's description of the severity of the pain has been so extreme as to appear implausible. In addition, the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of totally disabling symptoms and limitations. The undersigned, after evaluating these reports, considers them an inconsistency bearing on credibility. These reports do not support the claimant's complaints of a disabling level of pain or illness and indicate that he is exaggerating his limitations.

(Tr. at 21.)

There are no treatment records in the file after 2004, except for the somewhat belated pre-hearing report from Dr. Morgan, dated December 30, 2005. Despite plaintiff's testimony at the administrative hearing concerning his ongoing pain, he sought no treatment for it for more than a year prior to the hearing. Furthermore, the records are limited to non-specialists. If plaintiff's pain was as severe as he described and ongoing for as long as alleged, the fact that he was not referred for pain management or specialized care is significant. There is no evidence

that he received any intensive treatment beyond the initial MRI of his lumbar spine which showed mild narrowing of the disc spaces with dessication, and minimal endplate changes, all of which were found to be not significant. (Id. at 232.) There was also mild bulging at L3-4, and minimal bulging at L4-5. There was possible fissuring of the disc at L3-4 which could cause focal pain, but there was no herniation or spinal stenosis. (Id.) As Dr. Kumar noted, degenerative changes in anyone of plaintiff's age of 53 are normal, even in asymptomatic patients.[4] (Id. at 193.) An exam of the spine on October 17, 2004, showed normal range of motion of the cervical and lumbar spine, and no muscle spasm or tenderness in these areas. At this time, straight leg raising was normal as was gait. Plaintiff used no assistive devices to walk. (Tr. at 191.) Dr. Kumar concluded that despite a positive impingement sign on the left shoulder, plaintiff could do occasional overhead activities with both arms. There were no other limitations imposed. (Id. at 193.)

Treating records show no specialized treatment for the degree of pain alleged by plaintiff, such as epidural injections, surgery, or physical therapy. Plaintiff did see a chiropractor, who found on June 9, 2004, that plaintiff was permanent and stationary, and did not need vocational rehabilitation as he could continue his usual work of truck driving, and was retiring in a month. (Tr. at 183.) He was found to need a future medical award for his lower back and hip, however, and continued chiropractic care. Plaintiff's treatment was limited to these chiropractic treatments which were reported by both the practitioner and plaintiff himself to give relief and restore functioning. (Id.; tr. at 288.) Plaintiff did take pain medication, but in his disability report, dated August 30, 2004, plaintiff stated that he only took over the counter medicine, and was refusing all prescription medication. (Id. at 103.) Other disability reports, dated January 20, 2003 and November 20, 2004, listed no medications at all. (Id. at 109, 116.) At the February 8,

---

[4] Dr. Kumar evaluated plaintiff at the request of the Department of Social Services. (Tr. at 189.)

2006 hearing, plaintiff testified that he was taking prescription medication Mobic,[5] and that it was "good." (Id. at 288.)

Other than Dr. Kumar's report and the chiropractic records, there are no records of treatment after July, 2005, through the February, 2006 hearing. Plaintiff's motion states that "at the hearing [plaintiff] testified that he was under a doctor's care, and the attorney believed he had sent in the records. Mr. Powell should not be penalized for what may have been an oversight on the part of his attorney." Pl.'s Mot. at 12. The ALJ at hearing asked about those very records, and gave plaintiff's counsel two weeks to submit them, keeping the record open. (Tr. at 281-82.) Those records were never submitted, however. The claimant has the burden of presenting medical evidence demonstrating disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(a), (c), and 416.912(a), (c); Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)).

In regard to daily activities, plaintiff claims that although he can do certain activities, such as woodworking projects, riding a lawn mower, and other household tasks, but they take him much longer because he has to stop to rest due to the pain. (Tr. at 143-45.) His statement to his chiropractor, however, is that although he has to reduce his activities, he could still work on his car for four hours a day (in comparison to previously being able to work on it all day.) (Id. at 211.) This statement was made in June, 2004; however, the lack of treatment after 2004 indicates that this statement would still be current, if not more restrictive than what he can actually do, in consideration of the lack of medical records after that time period. Plaintiff's disability appeal filings indicate there was no change in his condition since his initial filing. (Id. at 106, 113.)

The ALJ properly analyzed the evidence relating to plaintiff's pain in relation to the appropriate factors required by the Bunnell line of cases.

---

[5] Mobic is a nonsteroidal anti-inflammatory, used to relieve pain and stiffness from arthritis. Www.pdrhealth.com.

CONCLUSION

The court finds the ALJ's assessment is supported by substantial evidence in the record and based on the proper legal standards. Accordingly, plaintiff's Motion for Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed to enter Judgment for the Commissioner.

DATED: 01/16/08

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Powell0025.ss.wpd